AMOS ANGIER *vs.* ORIN H. WEBBER.
SAME *vs.* GILBERT WAKEFIELD.

A , B. and C. were wagoners between Boston and Somerville, having several stands in Boston. B. and C. sold to A. tneir share of all the property used in the business, and the interest and goodwill in the business, and agreed in writing not in any manner to do anything which should in any wise impair or injure said interest and goodwill. B. and C. afterwards purchased two other stands, already used by other wagoners near the stands of A., and established wagons there, and engaged in the business of wagoners between Boston and Somerville, and carried merchandise for many persons who formerly employed A., B. and C., but did not solicit such business otherwise than by having such stands and wagons, and holding themselves in readiness to do it, and on one occasion at least doing it for less than former prices. *Held,* that an injunction should issue to restrain B. and C. " from soliciting, doing or obtaining any work, trade, custom or teaming business for or from any of the customers or persons " who had formerly been customers of A., B. and C., " and from doing anything to impair or injure the said interest and good will in said teaming business."

Two bills in equity, depending upon the following facts :

For some years before the first of December 1865, Angier, Webber and Wakefield were in partnership, under the name of Angier & Company, for carrying on the business of wagoners, in the city of Boston, and between Boston and Somerville. Angier kept the books, and superintended the business at their office in Charlestown Street, in Boston; and Webber and Wakefield, and men employed by the partnership, drove the wagons, of which there were five, each drawn by one horse, and licensed by the mayor and aldermen of Boston, three of them with stands at different points on said Charlestown Street, and the two others on adjoining streets, one being on Blackstone Street, and the other at the corner of Cross Street and Haymarket Square Great numbers of similar wagons of other parties, licensed in the same manner, had stands in these and adjoining streets.

On the 1st of December 1865, Webber for the consideration named therein executed and delivered to Angier a bill of sale the material portions of which were as follows:

" Know all men by these presents, that I, Orin H. Webber, of Somerville, . . . . . for and in consideration of the sum of twelve hundred dollars, . . . . paid by A. M. Angier, of

Somerville, . . . . . have granted, bargained and sold and de-livered, and by these presents do grant, bargain, sell and deliver, unto the said A. M. Angier, my undivided share of six horses, five wagons, four pungs; also all the harnesses belonging to and used with said horses, wagons and pungs; also all the tools, fixtures and implements used by said Webber in the teaming business; also all the interest and good will in and to teaming business now prosecuted by me in Boston, and between Somerville aforesaid and Boston. And I, the said Webber, do hereby covenant and agree to and with said Angier, his execu-tors, administrators and assigns, that I, said Webber, will not in any manner do any thing which shall, in any wise, impair or injure the said interest and good will in the teaming business hereby conveyed."

Angier and Wakefield afterwards continued the same busi-ness as partners until the 1st of March 1866, when Wakefield, in consideration of the sum of one thousand dollars to him paid by Angier, executed and delivered to him a precisely similar bill of sale.

On the 23d of May, Wakefield and Webber associated them-selves as partners, under the name of Wakefield & Webber, in the business of wagoners, and purchased the rights to two stands already used and enjoyed by other persons, (who had not, however, done any work for any of the customers or em-ployers of Angier & Company,) under licenses from the mayor and aldermen, one in Cross Street, a wagon's length from one of the plaintiff's stands, and another in Blackstone Street, about two hundred feet from another of his stands, and established a wagon at each of their stands, with their new partnership name painted thereon, and have since been engaged in the business of wagoners in Boston, and between Boston and Somerville, and have carried merchandise for many persons and firms who formerly employed the wagons of Angier & Company; but have not solicited such business, otherwise than by having such stands and wagons, and holding themselves and their wagons in readiness to do any business for which they might be employed. One person, who had previously employed Angier & Company,

applied to Angier, after the dissolution of that partnership, to carry merchandise from Boston to Somerville at a less rate than he had previously paid to that firm for like services, and, on Angier's refusing to do so, employed Wakefield & Webber to do it at the lesser rate.

Each of these bills prayed for an injunction to restrain the defendant, his servants, workmen and agents, " from soliciting for, doing or obtaining any work, trade, custom or teaming business for or from any of the customers or persons," who, before the date of the defendant's bill of sale to the plaintiff, were customers of or persons doing business with the partnership of Angier & Company; " and from doing anything to impair or injure the said interest and good will in said teaming business " conveyed by the defendant to the plaintiff as aforesaid.

*Gray,* J., being of opinion that the plaintiff was not entitled to injunctions as prayed for, ordered the bills to be dismissed; and the plaintiff appealed to the full court.

*C. Robinson, Jr.,* for the plaintiff. The contract was not void. There was a valuable consideration, and only a partial restraint, although it was to continue through the defendants' lives. 1 Story on Eq. § 292. *Alger* v. *Thacher,* 19 Pick. 51. *Sainter* v. *Ferguson,* 7 C. B. 716. *Atkyns* v. *Kinnier,* 4 Exch. 776. The parties having been partners, the plaintiff has a greater equity. *Kemble* v. *Kean,* 6 Sim. 333. As against the defendants, the plaintiff by the sales and covenants has the exclusive right to said interest and good will. Story on Part. § 99. Colly. Part. § 161. The term " good will " means all the benefit of the trade and business. *Harrison* v. *Gardner,* 2 Madd. 219. The defendants' acts were solicitations. If the defendants had covenanted that they would not solicit, obtain or do any work, trade or business for or from any of the customers of the former firm, the covenant would have been valid, and the plaintiff would have been entitled to an injunction. *Rannie* v. *Irvine,* 7 Man. & Gr. 969. *Whittaker* v. *Howe,* 3 Beav. 383. Colly. Part. §§ 347, 348. The covenant which the defendants made is more extensive than the above, and includes it. The injunction sought for is within the terms of the covenant. It is reasonable that

the defendants should be restrained, and, as the customers **are** well known to them, it is not impracticable.

*S. J. Thomas*, for the defendants. The agreement was that the defendants should do nothing to impair or injure the interest and good will in the teaming business conveyed.

Suppose the injunction had been granted in precisely the terms of the agreement, the defendants would nevertheless have rightly continued to do all that the facts find they have done, since the agreement was made. The facts find that the defendants have merely occupied stands, as teamsters, in the neighborhood of the plaintiff's stand, in place of others who formerly occupied such stands, and have done work for those who employed them thereto. This is no violation of the agreement. If it be, then the agreement is void as against public policy, being clearly in restraint of labor.

The injunction prayed for is much broader than the agreement. It is to restrain the defendants from soliciting or doing any work for any persons for whom the old firm had done work. The court will not give so broad a construction to the agreement. The true construction is that the defendants will do nothing to annoy, or affect with any inconvenience, the plaintiff's business; that they will do nothing unfair in the premises. Whether soliciting work from the plaintiff's customers would be in violation of the agreement, would probably depend on the mode and circumstances of such solicitation. But the facts find no such solicitation. ,

BIGELOW, C. J. The rights of the parties to this controversy can be readily ascertained by having in mind a clear idea of the nature of the right or interest which the plaintiff purchased under he name of the " good will of the business " prosecuted by the defendants, and which they expressly covenanted not to impair or injure in any manner. The plaintiff and defendants, prior to the execution of the agreements between them, had been co-partners in carrying on the business of wagoners between the city of Boston and the town of Somerville, occupying stands ir certain streets in the city with wagons and horses, where they or persons in their employment, waited to receive orders for the

transportation of merchandise and chattels to and from the places above named. The defendants at different times retired from this copartnership, and each sold to the plaintiff his title and rights in the personal property of the firm, together with his "interest and good will in and to the teaming business" which was at the time of the sale carried on by the firm. That this good will was a valuable existing interest in the outgoing partner, capable of valuation and assignment to the remaining partners, and which the law will recognize and protect, does not admit of any doubt. Colly. Part. § 161. *Kennedy* v. *Lee*, 3 Meriv. 441. *Bryson* v. *Whitehead*, 1 Sim. & Stu. 74. Nor can any serious question be made as to the nature of this interest. It was the benefit or advantage which had accrued to the firm, in addition to the value of their property, derived from their reputation for promptness, fidelity and integrity in their transactions, from their mode of doing business, and other incidental circumstances, in consequence of which they had acquired general patronage from constant and habitual customers. By the transfer of this ·interest to him, the plaintiff acquired a right, to the exclusion of the outgoing copartners — the defendants — to the enjoyment of the business which had heretofore been intrusted to the firm, and to the favor and patronage of the customers, and to such increase and addition thereto as would necessarily and naturally have accrued if the copartnership had not been dissolved. Colly. Part. § 161. It was this right thus acquired which each of the defendants expressly stipulated that he would do nothing in any way to injure or impair.

Turning now to the acts and doings of the defendants proved at the hearing in support of the allegations of the bill, we find that it is abundantly shown that both of them have violated this stipulation. They have entered into a copartnership for the transaction of the same kind of business between the same places of arrival and departure as was formerly carried on by the old firm ; they have procured and occupied stands with their wagons and horses in the immediate vicinity of those occupied by the plaintiff which they had by their agreement relinquished and transferred to him ; they have actually engaged

in transporting merchandise between Boston and Somerville for many of the customers and friends of the old firm; and have even gone so far as to transact their business at a lesser rate than was charged for such service by the old firm, and than that for which the plaintiff was willing to perform it. These facts show that the defendants have done acts which tend directly to deprive the plaintiff of the benefit of the reputation of the old firm, to take away from him the patronage which appertained to it, and to draw away the business of its habitual customers, to which he had acquired a right by the purchase of the good will.

For this violation of their covenant the plaintiff is entitled to relief in equity. An action at law will furnish no adequate remedy. The damages are in their nature such as not to be susceptible of proof or exact computation, and the injury caused by the acts of the defendants is a constantly recurring one, for which multiplied suits at law would afford but an imperfect remedy. 2 Story on Eq. § 925. 3 Dan. Ch. Pr. 1760. *Williams* v. *Williams,* 2 Swanst. 253.

It was suggested that this stipulation in relation to the good will of the firm was invalid, as being in undue restraint of trade. But the doctrine is now too well settled to be called in question, that a partial restriction on carrying on a trade or business in a particular locality is not open to any objection on the ground of illegality, as violating the rules of sound public policy

*Injunction granted.*